UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDEE HART,

      Plaintiff,

v.

YVONNE BRANTLEY
and JARED CHIROS,
in their Individual capacities,

      Defendants.

_____/

Case No. 24-
Hon.

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com

_____/

## **PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, BRANDEE HART, by and through her attorneys, THE MASTROMARCO FIRM, and hereby complains against Defendants, YVONNE BRANTLEY and JARED CHIROS, in their Individual capacities, stating as follows:

## **COMMON ALLEGATIONS**

1.      That Plaintiff is a resident of the County of Genesee, State of Michigan and is otherwise domiciled in the State of Michigan.

2.      That upon information and belief, Defendant Yvonne Brantley is a resident of the County of Bay, State of Michigan and is otherwise domiciled in the State of Michigan.

3.      That upon information and belief, Defendant Jared Chiros is a resident of the County of Genesee, State of Michigan and is otherwise domiciled in the State of Michigan.

4.      That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), excluding costs, interest, and attorney fees.

5.      That this Honorable Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

6.      That Plaintiff began working for the Michigan State Police on or about June 4, 2017.

7.      That on or about November 30, 2017, Plaintiff graduated from the 133rd Trooper Recruit School.

8.      That Plaintiff thereafter received an assignment to the MSP Flint Post.

9.      That throughout Plaintiff's career, Plaintiff has continued to distinguish herself, becoming a Field Training Officer and a First Aid Instructor.

10.     That Plaintiff was recommended to be part of the Southeast Michigan Recruiting Squad for the Second District from September 2020 through October 2021.

11.     That Plaintiff has received the Third District Accommodation for her service during a kidnapping that occurred in February 2022.

12.     That Plaintiff was hand selected to serve on a Leadership Forum Panel, to represent the Michigan State Police on a podcast and on Fox News Morning Blend.

13.     That through her assignment to the Flint Post, Plaintiff came under the supervision of Post Commander, First Lieutenant Yvonne Brantley.

14.     That also assigned to the Flint Post was Sergeant Jared Chiros.

15.     That at all times material hereto, Plaintiff performed her job duties as a trooper in a satisfactory and/or an above-satisfactory manner.

16.     That on or about March 8, 2022, Plaintiff went out with various law enforcement officers from the Michigan State Police for the first time socially.

17.     That said officers were gathering at a bar.

18.     That at one point in the evening, Plaintiff sat next to Defendant Chiros.

19.     That Defendant Chiros repeatedly rubbed Plaintiff's leg underneath the table.

20.     That Plaintiff expressed her discomfort and frustration by pushing

Defendant Chiros' hand off her leg several times.

21.     That from that date forward, Defendant Chiros repeatedly messaged and harassed Plaintiff, attempting to convince Plaintiff to spend time with him and engage in sexual activities with him.

22.     That Defendant Chiros would regularly message Plaintiff on SnapChat, requesting she come over or attempting to get Plaintiff to go into a hot tub with him.

23.     That Defendant Chiros repeatedly told Plaintiff that if they would "hook up," he would not say anything and he would be more worried about Plaintiff mentioning it.

24.     That Plaintiff rejected Defendant Chiros' advances on every occasion; however, Plaintiff's rejections did not deter Defendant Chiros the slightest.

25.     That on or about April 4, 2022, Plaintiff was at a bar, having a conversation with other members of the Michigan State Police across a table.

26.     That Defendant Chiros walked up to Plaintiff and smacked her buttocks without warning or her consent.

27.     That the groping of Plaintiff's buttocks constitutes criminal sexual conduct as Defendant Chiros accomplished the sexual contact and intentionally touched Plaintiff's buttocks through surprise.   See M.C.L. § 750.520e(1)(b)(v); M.C.L. § 750.520a(f), (q).

28.     That on another occasion, while at a bar socializing, Defendant Chiros

repeatedly grabbed Plaintiff around her waist, attempting to pull her into a particular area of the bar.

29.    That Plaintiff continuously pulled away and removed Defendant Chiros' hands from around her body.

30.    That others witnessed Defendant Chiros' conduct that evening and expressed discomfort to Plaintiff.

31.    That Defendant Chiros was pushing a particular drink he had purchased on Plaintiff and was adamant Plaintiff drink the drink.

32.    That others acknowledged to Plaintiff that they were watching Defendant Chiros with the drink to make sure he did not put a drug or other substance into the drink.

33.    That despite Plaintiff's repeated rejections of Defendant Chiros' advances, Defendant Chiros continued to sexually harass and assault Plaintiff.

34.    That at the same time, Defendant Brantley began commenting on Plaintiff's dress, insinuating Plaintiff was to blame for unwanted male attention.

35.    That at a mandatory meeting at the end of April 2022, Plaintiff was wearing full length dress pants with a shirt tucked in as the troopers were instructed to wear.

36.    That at said meeting, Defendant Brantley pulled Plaintiff aside and instructed Plaintiff that she needed to cover up her buttocks and that Plaintiff should

wear a jacket (even though they were inside) long enough so that her buttocks was covered by the jacket.

37.     That instead of ensuring that other male troopers and command staff acted with the professionalism their jobs required, Defendant Brantley told Plaintiff to "cover up" and blamed Plaintiff for attracting unwanted male attention.

38.     That in the spring/summer of 2022, Defendant Brantley learned of Defendant Chiros' misconduct and illegal actions, but failed to take remedial action and permitted Defendant Chiros' assault and harassment to continue.

39.     That Defendant Chiros further schemed and had the intent to force sexual activity onto Plaintiff.

40.     That on or about January 5, 2023, Plaintiff went out socially with coworkers.

41.     That Defendant Chiros developed a scheme to have Plaintiff left alone at his residence.

42.     That Defendant Chiros invited a group of individuals to go to his residence after the bar.

43.     That Plaintiff rode with another trooper to Defendant Chiros' residence.

44.     That throughout the evening Defendant Chiros had informed another trooper of his intent to have sex with Plaintiff and requested that the other troopers leave Plaintiff stranded at his residence.

45.     That two troopers who were in attendance informed Plaintiff, for her protection, that whatever she did, she could not stay the night at Defendant Chiros' residence.

46.     That Defendant Chiros was escalating his abusive behaviors and harassment of Plaintiff.

47.     That on or about March 25, 2023, Plaintiff attended the wedding of another law enforcement officer, which was also attended by numerous law enforcement officers, including Sgt. Chiros, Trooper Evan Neilson, and others.

48.     That after the wedding, several employees of the Michigan State Police, including Sgt. Chiros, Trooper Neilson, Plaintiff, and others, went to a local bar in Corunna, Michigan.

49.     That during the evening, Sgt. Chiros had a verbal altercation with Trooper Neilson.

50.     That Trooper Neilson had previously reported to the MSP that Sgt. Chiros lied on a police report and inappropriately engaged in a high-speed chase.

51.     That Defendant Chiros had been retaliating against Trooper Neilson.

52.     That at one point in the evening, Defendant Chiros called Trooper Neilson a "snitch" and then repeated it, "Yup, you snitch ass bitch."

53.     That also during the evening, Plaintiff spoke with Trooper Neilson and his wife.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

54.    That Defendant Chiros made repeated remarks that Plaintiff "fucks with snitches."

55.    That Defendant Chiros became so belligerent towards and was following Plaintiff that a coworker stepped in and had to tell Defendant Chiros to leave Plaintiff alone.

56.    That on or about March 27, 2023, Trooper Neilson made an administrative complaint with Internal Affairs regarding Defendant Chiros, which prompted an internal affairs investigation.

57.    That on or about August 8, 2023, Detective First Lieutenant Michael Anderson interviewed Plaintiff regarding Defendant Chiros' sexual assault and harassment as part of the internal affairs investigation.

58.    That during said interview, Plaintiff reported the above detailed sexual harassment and assault engaged in by Defendant Chiros.

59.    That Plaintiff further reported to D/F/Lt. Anderson that Defendant Brantley had been informed about Defendant Chiros and failed to act, which enabled Chiros to continue his predatory behaviors.

60.    That Plaintiff subsequently reported the same information to Lieutenant Gina Gettel during multiple internal affairs interviews.

61.    That on or about September 11, 2023, Plaintiff learned that she and other troopers had been placed on the Genesee County *Brady-Giglio* list.

62.    That a *Brady-Giglio* list is a list compiled at prosecutor's offices containing the names and details law enforcement officers who have sustained incidents of untruthfulness or lack of candor placing their credibility into question and requiring that said information be disclosed to the criminal defendant.

63.    The *Brady-Giglio* list arises out of two U.S. Supreme Court cases: (1) *Brady v. Maryland*, 373 U.S. 83; 83 S. Ct. 1194 (1963), which requires the prosecution to turn over all exculpatory evidence to the accused and includes evidence that may be used to impeach the prosecution's witnesses, such as police officers; and (2) *Giglio v. United States*, 405 U.S. 150; 92 S. Ct. 763 (1972), which determined that the reliability of a witness may be determinative of guilt or innocence and requires disclosure of all evidence effecting credibility.

64.    That placement on such a list makes it virtually impossible to act as a law enforcement officer within the jurisdiction as prosecutors will frequently decline to pursue criminal charges filed by officers on the list and will avoid calling officers on the list as witnesses.

65.    That as a result of being placed on said *Brady-Giglio* list, Plaintiff was required to work in Shiawassee County as opposed to Genesee County, where she was assigned to patrol.

66.    That during this time period, individuals from the Genesee County Prosecutor's Office noted that they were unable to write anything for law

enforcement officers on the list, questioned whether arrests made by those individuals were legal, and acknowledged that the office might have to dismiss charges based on the inability of certain officers to testify.

67. That Karen Hanson, Managing Assistant Prosecuting Attorney, had informed another trooper that Defendant Brantley had reported to Tammy Phillips, Chief Assistant Prosecuting Attorney, that Plaintiff and other troopers had lied during their internal affairs interviews regarding Defendant Chiros.

68. That Ms. Hanson further reported that Defendant Brantley refused to give specifics and, as such, everyone who participated in the internal affairs interviews against Defendant Chiros were placed on the *Brady-Giglio* list.

69. That Defendant Brantley's allegations that Plaintiff and other troopers had lied during an internal affairs investigation were defamatory, fabricated, and malicious.

70. That Defendant Brantley caused Plaintiff to be placed on the *Brady-Giglio* list in retaliation for her reporting Defendant Chiros' sexual assault and harassment.

71. That Plaintiff is unaware of the total time she spent on the *Brady-Giglio* list.

72. That on or about October 26, 2023, Specialist Lieutenant Eric Shumaker conducted an interview of Defendant Chiros.

73.     That during said interview and unbeknownst to Plaintiff, Defendant Chiros retaliated against Plaintiff and Trooper Nicholas Salski by falsely alleging that Plaintiff and Trooper Salski had had an off-duty motor vehicle accident on or about August 10, 2022, which was falsely reported to their insurance companies as occurring on private property and was not reported to law enforcement to avoid an investigation due to Trooper Salski being intoxicated.

74.     That said allegations are false and defamatory.

75.     That said false allegations caused Plaintiff and Trooper Salski to be investigated criminally and by internal affairs.

76.     That on or about January 9, 2024, Plaintiff received a telephone call from a detective, informing Plaintiff that she was being criminally investigated for felony insurance fraud relating to a crash that occurred in August 2022.

77.     That on or about August 10, 2022, while off duty, Plaintiff was involved in a minor accident when Trooper Salski rear-ended her vehicle while traveling at a very low rate of speed.

78.     That the apparent damage to the vehicles appeared limited and not to exceed $1,000.00.

79.     That under Michigan law, an individual involved in a motor vehicle accident is not required to report a motor vehicle accident to law enforcement if (1) there is no death or injury; or (2) the apparent damage does not exceed $1,000.00.

See M.C.L. § 257.622.

80.    That Plaintiff and Trooper Salski exchanged the information required by M.C.L. § 257.619(a)-(b).

81.    That Plaintiff promptly and appropriately reported the crash to her insurance company.

82.    That Trooper Salski subsequently reported the motor vehicle accident to his insurance and, after examination by professional mechanics, learned that the vehicle had greater damage than what had been readily apparent.

83.    That neither Plaintiff nor Trooper Salski engaged in any fraud or otherwise commit any crime.

84.    That Defendants made the retaliatory allegation that Plaintiff and Trooper Salski engaged in felony fraud in retaliation for Plaintiff reporting Defendant Chiros' sexual assault and harassment.

85.    That when said allegations were made, they were made with knowledge that the statements were false.

86.    That learning of the criminal investigation and the contents of the allegations caused Plaintiff very significant distress.

87.    That such allegations could also end Plaintiff's career as a law enforcement officer.

88.    That within a few days of January 9, 2024, Trooper Salski received a

call from Detective Sergeant Scott Singleton, who advised that he did not believe Trooper Salski committed a crime, but that Internal Affairs was making him continue to investigate.

89.     That on or about January 22, 2024, Plaintiff learned that any criminal charges had been denied.

90.     That on or about January 23, 2024, Trooper Salski informed Plaintiff that both he and Plaintiff were placed on the *Brady-Giglio* list notwithstanding the fact that criminal charges had been denied.

91.     That on or about said date, Trooper Salski received information form Assistant Prosecuting Attorney Sam Fleet that he and Plaintiff were back on the *Brady-Giglio* list due to the false accusations of insurance fraud.

92.     That on or about February 21, 2024, Plaintiff received a 48-hour notice for an internal affairs interview from Inspector Stephen Sipes, regarding the above-referenced motor vehicle accident.

93.     That on or about February 26, 2024, Plaintiff completed her internal affairs interview, at the end of which, Plaintiff was commended for her honesty, demonstrating that her placement on the *Brady-Giglio* list was pretextual and retaliatory in nature.

94.     That on or about February 29, 2024, Plaintiff observed a Subpoena Report from the Genesee County Prosecutor's Office, which listed Plaintiff as a

witness for an upcoming preliminary examination.

95.    That Plaintiff's name was identified as "Trooper Brandee (Giglio) Hart."

96.    That Plaintiff subsequently learned from another trooper that "(Giglio)" was inserted in Plaintiff's name, because of *Giglio* issues and that although the issue had been taken care of she remained on the list and more information would be given to prosecutors at a staff meeting in April.

97.    That on or about April 17, 2024, Plaintiff learned that she had not been subpoenaed to testify on a case she worked with a probationary trooper, who had been subpoenaed.

98.    That said probationary trooper was advised that Plaintiff did not get subpoenaed because Plaintiff had *Giglio* issues, contradicting the February 2024 statement that the *Giglio* issues had been taken care of.

99.    That notwithstanding the fact that Defendants' employment with the Michigan State Police had ended, their actions continued to cause Plaintiff damage and affect her career.

100.   That on or about April 30, 2024, the retaliation against Plaintiff continued when the Michigan State Police proposed a ten-day suspension, falsely claiming Plaintiff violated the law when she failed to report the off-duty motor vehicle accident.

101.    That on or about May 16, 2024, Plaintiff participated in a disciplinary conference at which Plaintiff received said retaliatory discipline.

102.    That Defendant Brantley's actions constitute free speech retaliation in violation of the First Amendment, 42 U.S.C. § 1983.

103.    That Defendant Brantley's actions constitute denial of procedural due process in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

104.    That Defendant Brantley's actions constitute denial of equal protections of the law in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

105.    That Defendant Brantley's actions constitute a denial of substantive due process right to be free from government action that shocks the conscience in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

106.    That Defendant Chiros' actions constitute denial of substantive due process right to bodily integrity in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

107.    That Defendant Chiros' actions constitute sex discrimination in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

108.    That Defendant Chiros' actions constitute a denial of substantive due process right to be free from government action that shocks the conscience in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

109.    That as a direct and proximate result of Defendants' unlawful actions,

Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

110.   That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

111.   That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

### COUNT I – FREE SPEEHC RETALIATION IN VIOLATION OF THE FIRST AMENDMENT, 42 U.S.C. § 1983 (AGAINST DEFENDANT BRANTLEY)

112.   That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 111 of her Common Allegations, word for word

and paragraph for paragraph, as if fully restated herein.

113.   That That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

114.   That the First Amendment to the United States Constitution provides a right to freedom of speech and expression.   U.S. CONST. amend. I; *Keyishian v. Board of Regents*, 385 U.S. 589, 605-606; 87 S. Ct. 675 (1967).

115.   That at all times material hereto, Defendant Brantley acted under the color of State law.

116.   That Plaintiff engaged in constitutionally protected speech or conduct.

117.   That Plaintiff engaged in constitutionally protected speech or conduct by reporting Defendant Chiros' sexual assault and harassment to Defendant Brantley and the internal affairs investigation.

118.   That said speech addresses a matter of public concern as it is a matter of public concern whether law enforcement officers are conducting themselves lawfully in the performance of their duties.   *Huber v. Leis*, 704 F. Supp. 131, 134 (S.D. Ohio 1989); *Marohnick v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986).

119.   That Plaintiff's interest in said speech outweighs any interest the Michigan State Police may have in regulating said speech, if any.

120.   That Defendant Brantley had knowledge of Plaintiff's protected

activity.

121.    That Defendant Brantley took adverse action against Plaintiff, including, but not limited to, (1) securing Plaintiff's placement on the Genesee County *Brady-Giglio* list; (2) causing Plaintiff to be investigated for allegedly engaging in insurance fraud and/or failing to report an accident; and (3) permitting Plaintiff to be further subjected to sexual assault and/or harassment.

122.    That Defendant Brantley's actions against Plaintiff would deter a person of ordinary firmness from engaging in such conduct.

123.    That a causal connection exists between Plaintiff's protected speech and the adverse action.

124.    That Defendant Brantley would not have taken the same adverse actions against Plaintiff in the absence of Plaintiff's protected speech.

125.    That Defendant Brantley is not entitled to qualified immunity.

126.    That Plaintiff's right to freedom of speech is clearly established.

127.    That Defendant Brantley's actions constitute free speech retaliation in violation of the First Amendment, 42 U.S.C. § 1983.

128.    That as a direct and proximate result of Defendant Brantley's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits,

and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

129. That as a direct and proximate result of Defendant Brantley's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

130. That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT II – DENIAL OF PROCEDURAL DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983 (AGAINST DEFENDANT BRANTLEY)

131. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 111 of her Common Allegations and paragraphs 112 through 130 of Count I, word for word and paragraph for paragraph, as if fully restated herein.

132. That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

133. That the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1; *see also Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

134. That "[a] public employee is entitled to procedural due process— including the opportunity for a hearing—and substantive protections if he stands to lose a constitutionally protected property interest or liberty interest." *Houchens v. Beshear*, 441 F. Supp. 3d 508, 517 (E.D. Ky. 2020).

135. That at all times material hereto, Defendant Brantley acted under the color of State law.

136. That at all times material hereto, Plaintiff had a property interest in her continued employment.

137. That Defendant Brantley interfered with Plaintiff's property interest in his continued employment by securing Plaintiff's placement on the Genesee County *Brady-Giglio* list by falsely accusing Plaintiff and others of lying during investigations into Defendants' improper and unlawful behavior.

138. That Defendant Brantley interfered with Plaintiff's property interests

without providing any due process.

139.   That when a protected property interest is implicated, "the right to some kind of prior hearing is paramount." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570; 92 S. Ct. 2701 (1972).

140.   That Defendant Brantley is not entitled to qualified immunity.

141.   That Plaintiff's property interests and Plaintiff's right to some kind of hearing prior to the infringement upon Plaintiff's property interest were clearly established.

142.   That Defendant Brantley's actions constitute a denial of procedural due process in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

143.   That as a direct and proximate result of Defendant Brantley's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

144.   That as a direct and proximate result of Defendant Brantley's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright,

mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

145. That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT III – DENIAL OF EQUAL PROTECTION OF THE LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983 (AGAINST DEFENDANT BRANTLEY)

146. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 111 of her Common Allegations, paragraphs 112 through 130 of Count I, and paragraphs 131 through 145 of Count II, word for word and paragraph for paragraph, as if fully restated herein.

147. That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

148. That the Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

149.   That at all times material hereto, Defendant Brantley acted under the color of State law.

150.   That at all times material hereto and by virtue of her reports of Defendant Chiros' unlawful behavior and her participation in the related internal affairs investigation, Plaintiff belonged to an identifiable group of troopers.

151.   That Defendant Brantley systematically retaliated against members of that identifiable group, subjecting them to disparate treatment.

152.   That Defendant Brantley treated the identifiable group differently than similarly situated troopers outside the identifiable group.

153.   That Defendant Brantley lacked a rational basis for the different treatment.

154.   That Defendant Brantley pursued the disparate treatment for unlawful and unethical purposes in violation of the Michigan State Police rules and regulations and with the intent to retaliate and harm Plaintiff and other members of said identifiable group.

155.   That as part of that disparate treatment, Defendant Brantley took adverse action against Plaintiff, including, but not limited to, securing Plaintiff's placement on the Genesee County *Brady-Giglio* list and causing Plaintiff to be subjected to investigation.

156.   That Defendant Brantley is not entitled to qualified immunity.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

157.   That Plaintiff's equal protection right to be treated similar to those in similar positions and without irrational adverse action is clearly established.

158.   That Defendants' actions constitute a denial of equal protection of the law in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

159.   That as a direct and proximate result of Defendant Brantley's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

160.   That as a direct and proximate result of Defendant Brantley's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

161.   That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND

DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

**COUNT IV – DENIAL OF SUBSTANTIVE DUE PROCESS IN VIOLATION OF THE COURTEENTH AMENDMENT, 42 U.S.C. § 1983 (AGAINST DEFENDANT BRANTLEY)**

162.    That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 111 of her Common Allegations, paragraphs 112 through 130 of Count I, paragraphs 131 through 145 of Count II, and paragraphs 146 through 161 of Count III, word for word and paragraph for paragraph, as if fully restated herein.

163.    That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

164.    That the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1; *see also Bazzetta*, 430 F.3d at 801.

165.    That the Due Process Clause of the Fourteenth Amendment protects a citizen's right to be free from government actions that shock the conscience and from arbitrary and capricious government actions. *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014).

166.   That at all times material hereto, Defendant Brantley acted under the color of State law.

167.   That Defendant Brantley engaged in a scheme to retaliate against individuals who reported Defendant Chiros' unlawful and unethical conduct and participated in the internal affairs investigation into Defendant Chiros' behavior.

168.   That Defendant Brantley was motivated by her personal relationship with Chiros and sought to intentionally harm those that crossed either of them or their compatriots.

169.   That Defendant Brantley further made false accusations that Plaintiff and other individuals who reported Defendant Chiros' unlawful and unethical behavior and participated in the internal affairs investigation had lied during said investigation and/or fabricated their statements to the Michigan State Police.

170.   That by doing so, Defendant Brantley caused Plaintiff and several individuals to be inappropriately placed on the Genesee County *Brady-Giglio* list and Plaintiff to be subjected to further investigation.

171.   That Defendant Brantley's actions shock the conscience and violate the decencies of civilized conduct.

172.   That Defendant Brantley's actions are so offensive that they do not comport with the traditional ideas of fair play and decency.

173.   That Defendant Brantley intended to injure Plaintiff and others.

174. That Defendant Brantley's actions were premeditated and intentional.

175. That Defendant Brantley is not entitled to qualified immunity.

176. That Plaintiff's right to be free from conscience-shocking governmental action and/or arbitrary and capricious governmental action is clearly established.

177. That Defendant Brantley's actions constitute a denial of substantive due process in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

178. That as a direct and proximate result of Defendant Brantley's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

179. That as a direct and proximate result of Defendant Brantley's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

180. That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT V – DENIAL OF SUBSTANTIVE DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983 (AGAINST DEFENDANT CHIROS)

181.    That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 111 of her Common Allegations, paragraphs 112 through 130 of Count I, paragraphs 131 through 145 of Count II, paragraphs 146 through 161 of Count III, and paragraphs 162 through 180 of Count IV, word for word and paragraph for paragraph, as if fully restated herein.

182.    That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

183.    That the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1; *see also Bazzetta*, 430 F.3d at 801.

184.    That the Due Process Clause of the Fourteenth Amendment affords citizens the right to personal security and bodily integrity.

185. That individuals possess a constitutional right to be free from forcible intrusion on their bodies against their will, absent a compelling state interest. *Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 506 (6th Cir. 2012).

186. That at all times material hereto, Defendant Chiros acted under the color of State law.

187. That Defendant Chiros violated Plaintiff's right to bodily integrity and to be free from sexual abuse by repeatedly sexually assaulting Plaintiff.

188. That Defendant Chiros' actions shock the conscience.

189. That Defendant Chiros acted with deliberate indifference to Plaintiff's federally protected rights.

190. That Defendant Chiros knew that by repeatedly sexually assaulting Plaintiff, it created a substantial risk of serious harm.

191. That Defendant Chiros did in fact infer that repeatedly sexually assaulting Plaintiff would create a substantial risk of harm.

192. That Defendant Chiros nonetheless acted with indifference and in callous disregard of Plaintiff's rights.

193. That Defendant Chiros had sufficient time to appreciate the risk caused by sexually assaulting Plaintiff.

194. That Defendant Chiros' actions serve no legitimate penal or law enforcement justification.

195. That Defendant Chiros' actions were not aimed to meet any legitimate objective.

196. That Defendant Chiros' actions were sadistically done for his own gratification, sexual or otherwise.

197. That Defendant Chiros is not entitled to qualified immunity.

198. That Plaintiff's right to be free from sexual abuse was clearly established.

199. That Defendant Chiros' actions constitute denial of substantive due process right to bodily integrity in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

200. That as a direct and proximate result of Defendant Chiros' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

201. That as a direct and proximate result of Defendant Chiros' unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright,

mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

202.   That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT VI – SEXUAL HARASSMENT IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983
### (AGAINST DEFENDANT CHIROS)

203.   That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 111 of her Common Allegations, paragraphs 112 through 130 of Count I, paragraphs 131 through 145 of Count II, paragraphs 146 through 161 of Count III, paragraphs 162 through 180 of Count IV, and paragraphs 181 through 202 of Count V, word for word and paragraph for paragraph, as if fully restated herein.

204.   That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

205.   That the Fourteenth Amendment to the United States Constitution

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

206.   That the Equal Protection Clause of the Fourteenth Amendment affords individuals the right to be free from intentional discrimination and sexual harassment. *Adair v. Hunter*, 236 F. Supp. 3d 1034, 1039-1040 (E.D. Tenn. 2017)("Indeed, courts, including the Supreme Court of the United States, have held for decades that sexual harassment is a form of gender discrimination proscribed by the Equal Protection Clause.").

207.   That Defendant Chiros sexually harassed and assaulted Plaintiff.

208.   That Plaintiff was and is a member of a protected class by virtue of her sex and/or gender.

209.   That Plaintiff was subjected to sexual harassment and sexual assault.

210.   That Plaintiff was subjected to unwelcomed sexual harassment and sexual assault.

211.   That said sexual harassment and assault was based on sex.

212.   That said sexual harassment and assault had the effect of unreasonably interfering with Plaintiff's performance and created an intimidating, hostile, or offensive work environment.

213.   That Defendant Chiros' actions serve no legitimate penal or law enforcement purpose.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

214.   That Defendant Chiros' actions were not aimed to meet any legitimate objective.

215.   That Defendant Chiros' actions were sadistically done for his own gratification, sexual or otherwise.

216.   That despite Plaintiff's complaints about Defendant Chiros' sexual harassment and assault, the harassment and assault continued.

217.   That Defendant Chiros is not entitled to qualified immunity.

218.   That Defendant Chiros' actions constitute sex discrimination in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

219.   That as a direct and proximate result of Defendant Chiros' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

220.   That as a direct and proximate result of Defendant Chiros' unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

of social pleasures, and disruption of lifestyle.

221. That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT VII – DENIAL OF SUBSTANTIVE DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983 (AGAINST DEFENDANT CHIROS)

222. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 111 of her Common Allegations, paragraphs 112 through 130 of Count I, paragraphs 131 through 145 of Count II, paragraphs 146 through 161 of Count III, paragraphs 162 through 180 of Count IV, paragraphs 181 through 202 of Count V and paragraphs 203 through 221 of Count VI, word for word and paragraph for paragraph, as if fully restated herein.

223. That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

224. That the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without

due process of law." U.S. CONST. amend. XIV, § 1; *see also Bazzetta*, 430 F.3d at 801.

225. That the Due Process Clause of the Fourteenth Amendment protects a citizen's right to be free from government actions that shock the conscience and from arbitrary and capricious government actions. *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014).

226. That at all times material hereto, Defendant Chiros acted under the color of State law.

227. That Defendant Chiros engaged in a scheme to retaliate against individuals who reported his unlawful and unethical behavior, including, but not limited to Plaintiff, who reported his sexual harassment and sexual assault.

228. That Defendant Chiros was motivated to retaliate by the reports, including Plaintiff's report, and sought to intentionally harm those that accused him of unlawful behavior.

229. That Defendant Chiros retaliated against Plaintiff by continuing to sexually harass and assault her, by blocking Plaintiff's career advancement, and by making false complaints about Plaintiff.

230. That Defendant Chiros' actions shock the conscience and violate the decencies of civilized conduct.

231. That Defendant Chiros' actions are so offensive that they do not

comport with the traditional ideas of fair play and decency.

232.   That Defendant Chiros intended to injure Plaintiff and others.

233.   That Defendant Chiros' actions were premeditated and intentional.

234.   That Defendant Brantley is not entitled to qualified immunity.

235.   That Plaintiff's right to be free from conscience-shocking governmental action and/or arbitrary and capricious governmental action is clearly established.

236.   That Defendant Chiros' actions constitute a denial of substantive due process in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

237.   That as a direct and proximate result of Defendant Chiros' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

238.   That as a direct and proximate result of Defendant Chiros' unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

239. That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: <u>August 14, 2024</u>    By:    /s/ Victor J. Mastromarco, Jr.
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, BRANDEE HART, by and through her attorneys,

THE MASTROMARCO FIRM, and hereby demands a trial by jury on all the above

issues, unless otherwise expressly waived.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: August 14, 2024          By:    */s/ Victor J. Mastromarco, Jr.*
                                        VICTOR J. MASTROMARCO, JR. (P34564)
                                        KEVIN J. KELLY (P74546)
                                        Attorneys for Plaintiff
                                        1024 N. Michigan Avenue
                                        Saginaw, Michigan 48602
                                        (989) 752-1414
                                        vmastromarco@mastromarcofirm.com
                                        kkelly@mastromarcofirm.com